IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RALPH OWEN BAKER, aka**
**WALTER-ELIYAH THODY,**

        **Petitioner,**

**v.**                                 **Civil Action No. 2:13cv58**
                                       **(Judge Bailey)**

**MARY JO WILLIAMS, U.S. Parole**
**Commission, and TERRY O'BRIEN,**
**Warden,**

        **Respondents.**

## REPORT AND RECOMMENDATION

### I. Introduction

On June 20, 2013, in the District of Columbia, the *pro se* petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2241 and paid the five dollar filing fee. By Order entered in that district on July 26, 2013, the case was transferred to this district.

On August 16, 2013, the Clerk of the Court sent the petitioner a Notice of Deficient Pleading, advising him that he must file his petition on an enclosed court-approved form. Petitioner filed the court-approved form petition on October 21, 2013. On October 22, 2013, the Warden was ordered to show cause why the writ should not be granted. On October 30, 2013, petitioner filed an amendment to provide exhibits he omitted attaching to his court-approved form. On November 19, 2013, the respondents filed a Motion to Dismiss or For Summary Judgment and Response to Order to Show Cause. Because petitioner was proceeding *pro se,* a Roseboro[1] Notice was issued the next day. On December 6, 2013, the petitioner filed a reply, and on December 30, 2013, his own Motion for Summary Judgment.

---

[1] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

1

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 2, is ripe for review.

## II. Factual and Procedural History

### A. Conviction and Sentence

Petitioner, a federal inmate currently incarcerated at USP Hazelton, previously served a 17-year, 2-month, and 28-day sentence comprised of sentences imposed by the U.S. District Court for the Eastern District of Texas; the U.S. District Court for the Western District of Oklahoma; and the Western District of North Carolina.[2] On September 19, 1989, he was released to begin parole supervision that was to continue until December 18, 2000.[3]

However, on July 12, 1991, and then again on August 29, 1991, Thody and a co-defendant twice robbed the same bank in Muskogee, Oklahoma, procuring almost $77,000.00. After the second robbery they fled; the chase ended when the police rammed their escape vehicle and they were arrested. State, and then federal charges ensued.[4]

On November 21, 1991, the Parole Commission ("USPC") issued a warrant for petitioner, alleging violations of the conditions of parole for (1) failure to report an arrest as required; (2) associating with persons having criminal record or engaged in criminal activity; and (3) bank robbery, assault, and possession of a dangerous weapon.[5] The USPC sent the warrant to the U.S. Marshals, Memphis, Tennessee, with instructions to place a detainer while petitioner was awaiting trial or sentencing or, if he had already been sentenced to a new federal term of

---

[2] Referred to herein as "the counterfeiting convictions."

[3] See Dkt.# 18-1 at 10, Certificate of Parole.

[4] See United States v. Thody, 978 F.2d 625, 627 - 28 (10th Cir. 1992).

[5] See Dkt.# 18-1 at 12 – 14, Warrant and Warrant Application.

imprisonment, to return the warrant to the USPC with information as to the institution designated for the service of the sentence.[6]

On January 28, 1992, after a jury trial, petitioner was convicted in the Eastern District of Oklahoma on two counts of bank robbery in violation of 18 U.S.C. § 2113(a); one count of possession of a firearm moved interstate after a felony conviction in violation of 18 U.S.C. § 922(g) and § 924(a)(2); two counts of use of a firearm during commission of a crime in violation of 18 U.S.C. § 924(c)(1); and one count of conspiracy in violation of 18 U.S.C. § 371. The sentence imposed was 475 months aggregate term of imprisonment, to be followed by three years of supervised release.[7] The United State Court of Appeals for the Tenth Circuit affirmed petitioner's conviction and sentence on October 30, 1992.[8]

After petitioner was sentenced, on July 14, 1992, the U.S. Marshal, Eastern District of Arkansas, returned the USPC's parole violation warrant as instructed.[9] On October 5, 1992, the U.S.P.C. forwarded the parole violator warrant to U.S.P. Leavenworth, with instructions to place a detainer.[10]

On October 5, 1992, the USPC sent a letter to the Warden of USP Leavenworth requesting a progress report on petitioner.[11] With that letter, the USPC enclosed a Form H-13[12] for petitioner to complete, and a Form CJA-22 to be used in the event petitioner wanted counsel

---

[6] See Dkt.# 18-1 at 15, Warrant Application and Warrant.

[7] See Dkt.# 18-1 at 16, supplement to the warrant application.

[8] See United States v. Thody, 978 F.2d 625 (1992).

[9] See Dkt.# 18-1 at 17.

[10] See Dkt.# 18-1 at 18.

[11] See Dkt.# 18-1 at 19.

[12] The Form H-13 is a notice of pending dispositional review on the record.

3

appointed to assist him in completing the form H-13.[13] The Form H-13 advised petitioner that the USPC would conduct a review of the detainer and decide whether to let it remain as a detainer, or withdraw the warrant; further, it advised that the Form H-13 was being provided for him to make a statement relative to this review.[14] On November 5, 1992, the USPC sent a second request to the Warden at USP Leavenworth for the progress report and the completed Form H-13.[15] On November 6, 1992, the USPC was informed by the Bureau of Prisons ("BOP") that the warrant had been placed as a detainer.[16]

After receiving the completed forms, the USPC conducted its review of the detainer. On February 1, 1993, the USPC issued its decision allowing the detainer to stand but noting that it would re-review its decision in January, 1996.[17] However, on May 14, 2003, pursuant to 18 U.S.C. §4214(b)(1), the USPC issued a Notice of Action, rescinding the earlier order scheduling a January 1996 dispositional record review until he came into federal custody, but affirming the decision to let the detainer stand. In doing so, the USPC noted that USPC practice no longer provided for subsequent reviews.[18]

The USPC acknowledges receiving letters from petitioner regarding the detainer on January 19, 2011, March 16, 2011, and May 24, 2011; each time, it issued responses, advising

---

[13] See Dkt.# 18-1 at 20 and 21.

[14] See Dkt.# 18-1 at 20.

[15] See Dkt.# 18-1 at 22.

[16] See Dkt.# 18-1 at 23.

[17] See USPC Notice of Action, Dkt.# 18-1 at 24.

[18] See Dkt.# 18-1 at 25.

4

petitioner that his detainer had been reviewed, and that the USPC's decision was to let the detainer stand. [19]

### III. Contentions of the Parties

#### A. The Petition

Petitioner contends that the USPC filed and has maintained an unlawful detainer on him. He asserts that the detainer is unlawful because he did not receive his requisite parole revocation hearing within 180 days of his entrance in federal custody on his present conviction, and thus, any determinations by the USPC have no lawful basis. Petitioner, 74 years old when he filed the instant petition, contends that on his projected date of release in 2026, he will be 87 years old, and that this detainer is prejudicing his application for a compassionate release,[20] pursuant to 18 U.S.C. §3582.

As relief, he requests that this court enter an Order, directing the USPC to withdraw its detainer.

#### B. Motion to Dismiss or for Summary Judgment

The respondents contend that the petition should be dismissed or summary judgment granted in their favor because:

1) petitioner is not entitled to a parole revocation hearing before the USPC's warrant is executed;

2) the USPC has conducted the required dispositional record review of its warrant/detainer; and

3) petitioner has not been prejudiced by the USPC's decision to place the parole violator warrant as a detainer.

#### C. Petitioner's Reply to Respondent's Motion to Dismiss or for Summary Judgment

---

[19] See Dkt.# 18-1 at 26, 27, and 28.

[20] Elsewhere, in a January 19, 2011 letter to the USPC, petitioner requested that the detainer be removed so that he could be transferred to an FCI in Oregon, to be closer to family. See Dkt.# 16-2 at 1.

Petitioner insists that under 28 CFR §2.47, the controlling law at the time of his 1983 counterfeiting convictions, his parole revocation required a revocation hearing within 180 days of his entrance into federal custody. He contends that the respondent unlawfully applied new law "ex post facto" to permit the USPC "to issue a parole violation warrant without such a hearing, and then conduct a revocation hearing at their discretion, after service of a new sentence."[21]

## D. Petitioner's Motion for Summary Judgment

Petitioner reiterates his arguments and attempts to refute the respondent's on the same, urging that a grant of summary judgment in his favor is "essential to the ends of justice, equity . . . respect for the law, and rights for the people."[22]

## IV. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

---

[21] Dkt.# 21 at 1.

[22] Dkt.# 22 at 3.

6

what the ... claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46.  In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id.  Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases.  See Blackledge v. Allison, 431 U.S. 63, 80 91977).  So too, has the

Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

### V. Analysis

**A. Mary Jo Williams, USPC**

In the petition, in addition to Warden Terry O'Brien, petitioner also names Mary Jo Williams as a respondent. However, the only proper respondent in a habeas action is the custodian of the prisoner. See 28 U.S.C. §2243 ("[t]he writ of habeas corpus or order to show

8

cause shall be directed to the person having custody of the person detained"); Rumsfeld v. Padilla, 542 U.S. 426, 434, 435 (2004) (the writ of habeas corpus acts upon the person with the ability to produce the prisoner's body before the habeas court, therefore, the only proper respondent is the petitioner's custodian); Braden v. 30th Judicial Cir. Ct. of Ky., 410 U.S. 484, 494 (1973) "[a] writ of habeas corpus does not act upon the prisoner who seeks habeas relief, but upon the person who holds him in . . . custody). Consequently, the only proper respondent in this case is the Warden of USP Hazelton, Terry O'Brien. Accordingly, the undersigned recommends that Ms. Williams be dismissed from this action.

## B. **Parole and Detainer**

Judicial review of a decision by the Parole Commission is limited. See Brown v. Lundgren, 528 F.2d 1054 (5th Cir. 1976); Billiteri v. United State Board of Parole, 541 F.2d 938 (2d Cir. 1976). "So long as there are no violations of any required due process protections and Commission has acted within its authority, [the District Court] will not usurp the Commission's position as established in the statutory scheme enacted by Congress." Stroud v. United States Parole Commission, 668 F.2d 843, 846 (5th Cir. 1982). The District Court may review an action of the Parole Commission to determine whether the decision of the Commission is arbitrary and capricious or an abuse of discretion. Dye v. United States Parole Commission, 558 F.2d 1376, 1378 (10th Cir. 1977). An action of the Commission is arbitrary and capricious, or an abuse of discretion, when it is irrational, based upon impermissible considerations, or when it fails to comply with the Commission's own rules and regulations. Zannino v. Arnold, 531 F.2d 687, 690-691 (3rd Cir. 1976).

Section 4214 provides for a parole revocation hearing within sixty days of a determination of probable cause of parole violation, except where the parolee has been convicted

9

of a crime after release on parole. 18 U.S.C. §§4214(a)(1)(B) and 4214(b)(1). If a parolee is convicted of a criminal offense while on parole, that conviction constitutes probable cause and a parole violator warrant may be placed as a detainer at the institution where he is serving his new sentence. 18 U.S.C. §4214(b)(1). The detainer is reviewable within 180 days of notification to the USPC of its placement. "Nonetheless, a warrant is not considered executed when it is placed as a detainer, and need not be executed until the new sentence has been served." Hopper v. United States Parole Commission, 702 F.2d 842, 848 (9th Cir. 1982). The USPC has discretion to decide to whether to initiate parole revocation proceedings or defer a final decision. See 18 USC §4214(a)(1)(A)(i); Moody v. Daggett, 429 U.S. 78, 87 (1976)(upholding the USPC's decision to delay revocation hearing until completion of the new sentence, effectively running the parole violator term consecutively to the new sentence). See also Gaddy v. Michael, 519 F.2d 669, 674 (4th Cir. 1975) (The execution of a warrant may be held in abeyance for the service of an intervening sentence). However, a parolee who is sentenced for a new offense committed while on parole is not entitled to have the balance of the first sentence run concurrently with the new sentence. See Gaddy, *supra* at 678; Heath v. U.S. Parole Comm'n., 788 F.2d 85, 92 (2nd Cir. 1986); Moore v. Smith, 412 F.2d 720, 724 (7th Cir. 1979); Tanner v. Moselely, 441 F.2d 122, 123 (8th Cir. 1971); King v. U.S. Parole Comm'n., 744 F.2d 1449, 1452 (11th Cir. 1984).

Here, a review of the record indicates that federal charges on the bank robbery convictions were not brought until 1991. Petitioner was convicted and sentenced on January 28, 1992. The parole violator warrant was returned to the US Marshal in in the Eastern District of Arkansas on July 14, 1992. By then, petitioner had already been transferred to USP Terre Haute, Indiana.

The instruction attached to the November 19, 1991 parole violator warrant[23] rendered ineffective any attempted execution of the warrant by the US Marshal in the Eastern District of Arkansas on July 14, 1992. Therefore, petitioner's right to a parole revocation hearing pursuant to 18 U.S.C. § 4214(a)(1) was not triggered on July 14, 1992. The time for a parole revocation hearing is calculated from the execution of a federal warrant. Because the warrant was placed as a detainer and has not yet been executed, petitioner's right to a parole revocation hearing pursuant to 18 U.S.C. § 4214(c) has not yet been triggered. See Hopper, *supra* at 848. Petitioner's present federal custody is not a result of the USPC's warrant; it is a consequence of his new federal sentences. Once that time is served, he will be brought back into custody for his parole violation. While the existence of the detainer may well preclude his transfer to a particular facility, such a denial does not impair petitioner's ability to defend himself at his revocation hearing. See Moody, *supra* at 86 -88 and n.9 (rejecting prisoner's claim that because his detainer adversely affected his prion classification and qualification for participating in certain prison programs, it implicated a due process right). While it may not be the outcome petitioner wishes, the USPC has not abused its discretion; petitioner is not entitled to have the detainer lifted.

Finally, despite petitioner's contention to the contrary, the USPC did in fact conduct the requisite dispositional review. In the February 1, 1993, Notice of Action, it advised petitioner of its intent to let the detainer stand and re-review the record in 1996. Subsequently, in a May 14, 2003 Notice of Action, it rescinded the portion of its earlier decision to schedule subsequent dispositional record review in 1996, and advised him that he would be "afforded a revocation

---

[23] See Dkt.# 18-1 at 15, ¶s 3 and 5.

hearing when you come into federal custody.[24] While the USPC might have clarified what it meant by "come into federal custody," it is clear that pursuant to its guidelines, it was referring to coming into federal custody for the parole violation. Thus, this claim is also moot.

Accordingly, petitioner's claim that he was entitled to a parole revocation hearing within 180 days of his entrance in federal custody on his *present* conviction has no merit, is moot, and must be dismissed.

## C. Ex Post Facto Violation

Petitioner contends that under 28 CFR §2.47, the controlling law at the time of his 1983 counterfeiting convictions, his parole revocation necessitated a revocation hearing within 180 days after his entrance into federal custody. He argues that the USPC applied new law ex post facto, permitting it to issue his parole violator warrant without a hearing, "and then conduct a revocation hearing at their discretion, after service of a new sentence."

"Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed" violates the *ex post facto* clause of the Constitution. Calder v. Bull, 3 U.S. 386, 390 (1798)(internal punctuation omitted). There are two elements necessary for an ex post facto violation: (1) a retrospective law, (2) that disadvantages the offender or leads to a substantial risk of a longer term of imprisonment. Weaver v. Graham, 450 U.S. 24, 29 (1981). "The critical question is whether the law changes the legal consequences of acts completed before its effective date." Id. at 31.

As a preliminary point, the vast majority of federal circuit courts that have considered the question have concluded that the federal parole guidelines are not "laws" for the purpose of the Ex Post Facto Clause. See Beltempo v. Hadden, 815 F.2d 873 (2nd Cir. 1987); Kelly v. Southerland, 967 F.2d 1531, 1532-33 (11th Cir. 1992); Sheary v. U.S. Parole Comm'n, 822 F.2d

---

[24] Dkt.# 18-1 at 14 and 15.

556, 558 (5th Cir. 1987); Rifai v. United States Parole Commission, 586 F.2d 695, 698 (9th Cir. 1978)(stating that the USPC parole guidelines "are merely procedural guideposts, without the characteristics of laws"); Vermouth v. Corrothers, 827 F.2d 599, 604 (9th Cir. 1987); Inglese v. United States Parole Commission, 768 F2d 932, 934-39 (7th Cir. 1985); Hayward v. United States Parole Commission, 659 F.2d 857, 862 (8th Cir. 1981), cert denied, 456 U.S. 935 (1982); Warren v. United States Parole Commission, 212 U.S. App. D.C. 137, 659 F.2d 183, 193-97 (D.C. Cir. 1981), *cert. denied*, 455 U.S. 950 (1982); but see U.S.A. ex rel. Forman v. McCall, 776 F.2d 1156, 1159 (3rd Cir. 1985) (holding that "if administered without sufficient flexibility, the guidelines could be considered laws for ex post facto purposes," but recognizing that "[t]his position has since been rejected by every other circuit that has addressed the issue"). Most circuits have held that the guidelines are not laws for purposes of the *ex post facto* clause.[25] "That Congress has placed boundaries on the Commission's discretion does not transform the Guidelines into law." Wallace v. Christensen, 802 F.2d 1539, 1553 (1986).

In the instant case, even if the parole guidelines could be construed as "laws" for the purpose of the Ex Post Facto Clause, petitioner's claim that he was entitled to a hearing within 180 days of being taken into federal custody has no merit. The act in question is the felony that

---

[25] Although the United States Court of Appeals for the Fourth Circuit has determined that discretionary administrative policies do not violate the Ex Post Facto Clause (see e.g., Warren v. Baskerville, 233 F.3d 204, 207 (4th Cir. 2000)(construing the terms of the Virginia State Parole Board's 1997 Policy Manual and stating that "change in an administrative policy in effect at the time of a criminal's underlying offenses does not run afoul of the prohibition against ex post facto laws")), it does not appear to have addressed the question of whether the USPC's Guidelines constitute laws (or regulations) or administrative policies for ex post facto purposes. However, the Southern District of West Virginia has indicated its willingness do so. See McKissick v. United States Parole Comm'n, 295 F. Supp. 2d 643 (S.D. W.Va. 2003)(decision by District Judge Charles H. Haden adopting the magistrate judge's report and recommendation in McKissick v. United States Parole Comm'n., 295 F.Supp. 2d 643, 647 (S.D. W.Va. 2003)("the USPC parole guidelines do not constitute laws for purposes of *ex post facto* consideration.")).

led to the petitioner's parole revocation. That act occurred in 1991, when the federal parole guidelines were already in effect.[26]

Despite petitioner's insistence that a parole revocation decision under 28 CFR §2.47 would have afforded him relief, a review of 28 CFR §2.47 reveals that the outcome would be the same:

> Warrant placed as a detainer and dispositional review.
>
> **(a)** When a parolee is serving a new sentence in a federal, state or local institution, a parole violation warrant may be placed against him as a detainer. . . (2) . . . it shall be the policy of the Commission that the revoked parolee's original sentence (which due to the new conviction, stopped running upon his last release from federal confinement on parole) again start to run only upon release from the confinement portion of the new sentence or the date of reparole granted pursuant of these rules, whichever comes first. . . .

28 CFR §2.47(a)(e) and (2). See also Moody, *supra* at 85 (1976)("It is now firm Commission policy that unless "substantial mitigating circumstances" are shown, the parole violator term of a parolee convicted of crime is to run consecutively to the sentence imposed for the subsequent offense.").

Therefore, when the petitioner committed the 1991 crimes that led to his parole revocation, the use of the federal parole guidelines was not retrospective; did not disadvantage him; or lead to a more substantial risk of a longer term of imprisonment. Accordingly, the Commission's use of the federal guidelines in revoking the petitioner's parole and choosing to let the detainer stand until petitioner completes the sentence for his 1991 crimes does not violate the Ex Post Facto Clause.

## VI. Recommendation

---

[26] Twenty-Eight CFR §2.47 was enacted in 1976 as the Parole Commission and reorganization Act, Pub. L. 94-233, 90 Stat. 219 *et seq*. The Act renamed the Board the Parole Commission and made other changes in federal parole procedures, principally to codify what were already the Board's existing practices.

For the foregoing reasons, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Dkt.# 17) be **GRANTED**, and the petition (Dkt.# 1 and 13) be **DENIED** and **DISMISSED with prejudice**. In addition, the undersigned recommends that the petitioner's pending Motion for Summary Judgment (Dkt. #22) be **DENIED as moot**.

**Within fourteen (14) days** after being served with a copy of this Report and Recommendation, **or by March 17, 2014**, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to transmit a copy electronically to all counsel of record.

DATED: March 3, 2014

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE